**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| **MICHELLE BROWN,** | ) | **CASE NO. 1:12-CV-1915** |
| | ) | |
| **Plaintiff,** | ) | **MAGISTRATE JUDGE** |
| | ) | **GEORGE J. LIMBERT** |
| **v.** | ) | |
| | ) | **MEMORANDUM AND OPINION** |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY ADMINISTRATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

Plaintiff requests judicial review of the final decision of the Commissioner of Social
Security denying Michelle Brown Disability Insurance Benefits (DIB) and Supplemental
Security Income (SSI). The Plaintiff asserts that the Administrative Law Judge (ALJ) erred
in his February 25, 2011 decision in finding that Plaintiff was not disabled despite limitations
from bilateral knee osteoarthritis wherein the ALJ found that Plaintiff retained the residual
functional capacity to perform her past relevant work or, in the alternative, a limited range
of sedentary work (Tr. 24-26). The Court finds that substantial evidence supports the ALJ's
decision for the following reasons:

I.      PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI on August 14, 2008, alleging disability since April 24,
2008 due to degenerative joint disease and left knee arthritis (Tr. 125-33, 151). Her application

was denied initially and on reconsideration (Tr. 63-66). An administrative law judge (ALJ) held a hearing on February 18, 2011, at which Plaintiff, who was represented by counsel, and a vocational expert (VE) testified (Tr. 31-61). On February 25, 2011, the ALJ issued a decision finding that Plaintiff was capable of performing her past relevant work, or in the alternative, a significant number of jobs in the national economy, and, therefore, was not disabled under the Act (Tr. 14-26).  The Appeals Council denied Plaintiff's request to review the ALJ's decision, making it the final decision of the Commissioner (Tr. 3-8).  Hence, Plaintiff has requested judicial review of the Commissioner's final decision pursuant to 42 U.S. C. 405(g) and 1383(c) (Tr. 1-9).

## II.    STATEMENT OF FACTS

Plaintiff was 48 years old on her alleged onset date (Tr. 125), making her a "younger" individual under the regulations.  She completed two years of college (Tr. 155).  Plaintiff had past relevant work as a customer service representative (Tr. 152)..

## III.    SUMMARY OF MEDICAL EVIDENCE

An MRI of Plaintiff's left knee performed on July 24, 2007 showed severe patellofemoral compartment degenerative arthrosis, moderate to severe medial femorotibial compartment degenerative arthrosis, MCL sprain, medial meniscus tear, distal quadriceps and patellar tendinosis, joint effusion, and a 2 cm popliteal cyst (Tr. 236). Prior x-rays of the left knee also demonstrated degenerative changes (Tr. 238, 239, 242). An x-ray of her left foot performed in July 2007 showed mild osteoarthrosis of the first MTP joint and calcaneal spur at the insertion of the plantar fascia (Tr. 239).  An x-ray

of Plaintiff's right foot from 2004 showed calcaneal spurring (Tr. 241).

On October 28, 2008, Fairview Hospital's emergency department performed an x-ray of Plaintiff's right knee which showed minimal joint effusion (Tr. 209).  An x-ray of her left knee, performed on November 25, 2008, revealed narrowing of the medial compartment and spurs off of the distal femur, proximal tibia, and patella (Tr. 222).

A consultative examiner ("CE"), Dr. Kimberly Togliatti-Trickett, MD, evaluated Plaintiff on November 25, 2008 (Tr. 214-220).  Dr. Togliatti-Trickett's examination revealed 4/5 strength with knee flexion and extension bilaterally due to pain limitations, and moderately reduced knee range of motion, right knee worse than left knee (Tr. 214, 217, 219).  The CE also found slight increase in genu valgus bilaterally, limited range of motion of the hips bilaterally, tenderness with palpation at the medial and lateral joint lines of the knees bilaterally, and a palpable Baker's cyst on the right knee (Tr. 219).  The CE confirmed that Plaintiff has ambulated with a cane since July 2007 due to bilateral knee osteoarthritis, and spurs in her left knee and bilateral feet (Tr. 218, 236, 238, 239, 241, 242).  Dr. Togliatti-Trickett observed Plaintiff's abnormal gait, which she described as a stiff-legged straight gait (Tr. 219).  The CE reported Plaintiff had difficulty ambulating on her toes because it aggravated the pain in her knees, rising from a seated position and required the use of the chair and examination table to stand, and was unable to squat (Tr. 219).  The CE concluded that Plaintiff is limited to sedentary work with the opportunity to stand and change positions with standing or walking limited to no more than one to two hours throughout the day and no more than 45 to 60 minutes at a time (Tr.

219-220).

On January 7, 2009, Medical Consultant, Dr. W. Jerry McCloud, MD, completed a physical RFC assessment (Tr. 223-230).  Dr. McCloud concluded that Plaintiff was limited to lifting 20 pounds occasionally and 10 pounds frequently; standing and/or walking for 6 hours in an 8-hour workday; sitting for about 6 hours in an 8-hour workday; should never climb ladders, ropes, or scaffolds; should never kneel, crouch, or crawl; could occasionally climb ramps and stairs, balance, and stoop; and is required to take frequent breaks, altering weight, due to bilateral osteoarthritis in her knees (Tr. 224-225).

On March 7, 2009, Plaintiff's treating physician, Dr. Margaret A. Kravanya, DO, examined Plaintiff and observed that she was using crutches and could not bear weight on her right knee due to severe pain and swelling (Tr. 232, 248).  Dr. Kravanya reported that Plaintiff's severe right knee osteoarthritis renders her totally disabled from employment (Tr. 231).

On April 23, 2009, Dr. Kravanya concluded that Plaintiff is not a candidate for employment due to degenerative osteoarthritis of her knees bilaterally, medial meniscus tear of the left knee, and quadriceps and patellar tendinosis of the left knee, all confirmed by an MRI performed on July 24, 2007 (Tr. 234, 236).  Dr. Kravanya restricted Plaintiff to standing or ambulating 30 minutes, lifting up to 10 pounds, no bending, stooping, kneeling, or ascending/descending stairs (Tr. 235).  Dr. Kravanya reported that Plaintiff experiences increased symptoms with sustained sitting, and her concentration and focus is limited due to her medical condition causing secondary anxiety and depression (Tr.

4

235).  Dr. Kravanya explained that Plaintiff has used crutches to ambulate since July 21, 2007, and has been unable to proceed with physical therapy, orthopedic consultation, or knee replacement surgery due to lack of insurance coverage (Tr. 234, 244).

On April 7, 2010, an orthopaedic specialist, Dr. David Ebenezer, MD, evaluated Plaintiff (Tr. 291).  Plaintiff reported using a cane since 2007 with progressive worsening of her bilateral knee pain and exacerbation with activity (Tr. 291).  Plaintiff reported frequent swelling of her knees, and pain in her right achilles and left great toe due to her altered gait (Tr. 291).  X-rays of her bilateral knees revealed severe tricompartmental osteoarthritis, demonstrating worsening of her condition since the prior imaging in 2007 and 2008 (Tr. 287-288, 292). An x-ray of her left foot showed degenerative changes with spurring and a small plantar calcaneal enthesophyte (Tr. 287-288, 292).  On examination, Dr. Ebenezer found mild crepitus with range of motion of her knees bilaterally, pain along the lateral and medial joint line, and tenderness of the right achilles and left foot (Tr. 292). Dr. Ebenezer diagnosed bilateral knee osteoarthritis, non-insertional achilles tendinitis, and left 1st MTP (Tr. 292).  Dr. Ebenezer recommended conservative options such as weight loss and physical therapy before proceeding with further surgical consideration (Tr. 292).

On April 8, 2010, EMS brought Plaintiff to Metro Health Medical Center's emergency department for complaints of headaches, dizziness, and daytime somnolence, and Plaintiff was diagnosed with a nonspecific headache and dizziness likely related to sleep apnea (Tr. 276-278).  On May 27, 2010, Dr. Maryanne Haddad, M.D. diagnosed

5

Plaintiff with fatigue, which she suspected was caused by obstructive sleep apnea and referred her for a sleep study (Tr. 313).  On July 16, 2010, Plaintiff underwent a polysomnogram which revealed severe obstructive sleep apnea (Tr. 304-305, 308-311).

On April 17, 2010, Dr. Kravanya completed a medical source statement of Plaintiff's physical capacity (Tr. 274-275).  Dr. Kravanya limited Plaintiff to lifting less than 15 pounds; standing and/or walking for less than 2 hours total in an 8-hour workday; sitting for less than 2 hours at a time and 5 hours total in an 8-hour workday; no climbing, balancing, stooping, crouching, kneeling, crawling, reaching, pushing or pulling; and no exposure to moving machinery, temperature extremes, chemicals, dust, or fumes (Tr. 274-275).  Dr. Kravanya also reported that Plaintiff needs additional breaks during an 8-hour workday, needs an at-will sit/stand option, and that her restrictions are caused by the severe osteoarthritis in both of her knees (Tr. 274-275).

On June 8, 2010, The Greater Cleveland Regional Transit Authority ("RTA") found Plaintiff eligible for door-to-door service through their Paratransit service under the Americans with Disabilities Act (ADA) of 1990 due to disability-related functional limitations that prevent her from using the regular transit service (Tr. 303).

Plaintiff began physical therapy at Metro Health Medical Center on July 21, 2010 for her bilateral knee pain (Tr. 337-338).  Plaintiff reported significant bilateral knee pain even at rest which increases with walking and weight bearing activities (Tr. 340).  Evaluation revealed decreased bilateral knee flexion range of motion, muscle weakness, and abnormal gait (Tr. 340).

On August 4, 2010, Plaintiff returned to the orthopaedic department at Metro Health Medical Center with complaints of bilateral knee pain due to osteoarthritis (Tr. 336).  Dr. Ryan Garcia, MD confirmed crepitus with extension and flexion of her knees bilaterally, and recommended physical therapy, weight reduction, and offered cortisone injections (Tr. 336).  Dr. Garcia reported that Plaintiff will likely need total knee replacement surgery in the future, but noted her age in recommending delaying surgery for the future (Tr. 336).

On September 7, 2010, Plaintiff presented to the Sleep Medicine Clinic for a comprehensive sleep evaluation (Tr. 358).  She reported intentionally limiting her driving, waking with morning headaches, and taking naps (Tr. 360).  Jan Steinel, CNP diagnosed hypersomnia and severe obstructive sleep apnea (Tr. 361).  A titration study performed on October 26, 2010 concluded that Plaintiff's sleep apnea requires CPAP setting at 12 cm H20 (Tr. 368-370).  Plaintiff returned to the Sleep Medicine Clinic on January 4, 2011 and Jan Steinel, CNP diagnosed morbid obesity, sleep hygiene disorder, sleep restriction, and severe obstructive sleep apnea (Tr. 379-380).

On November 24, 2010, orthopedic specialist Dr. Benjamin Beecher, MD evaluated Plaintiff's bilateral knee osteoarthritis (Tr. 377). Dr. Beecher observed Plaintiff was still using a cane, and recommended injections (which Plaintiff declined) and weight loss (Tr. 377).

Dr. Kravanya evaluated Plaintiff on September 23, 2011 (Tr. 513).  Plaintiff was using a cane for ambulation, crying due to frustration with her physical condition, and

7

Dr. Kravanya's examination revealed tenderness, crepitus, decreased range of motion, and edema of her knees bilaterally, heel pain and plantar pain with palpation (Tr. 513).

On October 1, 2011, repeat x-rays of Plaintiff's right foot and bilateral knees confirmed right calcaneal spur of the right foot, lateral subluxation and degenerative changes of the right knee, and moderate-to-severe joint space narrowing with associated osteophyte formation of the left knee (Tr. 488-491).

A chest x-ray performed on March 12, 2010 revealed osteophyte formation of the right acromioclavicular joint, suspicious for rotator cuff etiologies (Tr. 289).  X-rays of Plaintiff's shoulders on October 11, 2011 showed mild degenerative changes of the acromioclavicular joints bilaterally (Tr. 526).

On December 9, 2011, Plaintiff reported to Dr. Kravanya that she experiences severe pain and stiffness in the morning and is unable to stand for more than 5 minutes or sit for a sustained period of time due to pain (Tr. 515).  Plaintiff reported she is unable to stand at the sink long enough to do the dishes without severe pain requiring her to sit and needs her husband's assistance to put on her own socks (Tr. 515-516).  On examination, Dr. Kravanya observed that Plaintiff was unable to stand upright and was using a cane for ambulation (Tr. 515).  On December 23, 2011, Dr. Kravanya extended Plaintiff's disability placard for another five years (Tr. 516, 531). An x-ray of her lumbar spine performed on December 31, 2011 shows disk space narrowing at L3-4, L4-5, and L5-S1, osteophyte formation, and facet sclerosis (Tr. 507).

On April 20, 2012, Dr. Kravanya completed a Physician's Certification of

Plaintiff's disability (Tr. 540).  Dr. Kravanya certified that Plaintiff has a medically determinable physical or mental impairment that prevents her from engaging in any substantial gainful activity in any field of work, and which is expected to result in death, has lasted, or is expected to last for a continuous period of not less than 60 months (Tr. 540).

Dr. Kravanya confirmed that Plaintiff is diagnosed with degenerative arthritis of both knees, shoulders, spine, hands and feet, hypertension, and severe obesity with advancing deterioration of joints causing severe pain, limited motion, sleep disorder, and stress (Tr. 540).  Dr. Kravanya specified Plaintiff's physical restrictions, explaining she requires the use of a cane due to unsteadiness, is unable to maintain sustained positions including sitting, has difficulty with weight-bearing and putting on her socks and shoes, and is unable to bend, lift, or climb stairs (Tr. 540).  Dr. Kravanya further explained that Plaintiff cannot focus and concentrate due to her pain and physical limitations resulting in irritability and social inadequacy (Tr. 540).

IV.    SUMMARY OF TESTIMONY

At the administrative hearing, Plaintiff reported taking only Motrin for her knee pain (Tr. 38-39).  The vocational expert classified Plaintiff's past work as semi-skilled sedentary (Tr. 51).  The ALJ posed a hypothetical question, asking whether an individual with Plaintiff's vocational profile could work if they were limited to sedentary work, only occasionally pushing with the lower extremities, occasional lifting with the right arm, [other postural limitations] (Tr. 51-52).  The vocational expert identified the occupations

of credit authorizer, order clerk, and answering service worker (Tr. 54).  The vocational

expert further testified that a significant number of sedentary jobs allowed for a sit/stand

option and that use of a cane would reduce the number of available jobs to 50-60% (Tr.

53-55).

On cross-examination, the vocational expert confirmed that a modern-day customer

service representative is required to input data while simultaneously dealing with people,

which may limit the opportunity to sit or stand "at-will" (Tr. 58-59).   The vocational

expert further confirmed that most employers will tolerate one, maybe two, days of being

absent per month for this kind of sedentary employment, and up to 20 percent of time

off-task (Tr. 59-60).


V.      STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating

entitlement to disability insurance benefits. These steps are:

1.      An individual who is working and engaging in substantial gainful activity will not
        be found to be "disabled" regardless of medical findings (Sections 20 C.F.R.
        404.1520(b) and 416.920(b) (1992);

2.      An individual who does not have a "severe impairment" will not be found to be
        "disabled" (Sections 20 C.F.R. 404.1520(c) and 416.920(c) (1992);

3.      If an individual is not working and is suffering from a severe impairment which
        meets the duration requirement, see Sections 20 C.F.R. 404.1509 and 416.909
        (1992), and which meets or is equivalent to a listed impairment in Sections20
        C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without
        consideration of vocational factors (Sections 20 C.F.R. 404.1520(d) and 416.920(d)
        (1992);

4.      If an individual is capable of performing the kind of work he or she has done in the

past, a finding of "not disabled" must be made (Sections 20 C.F.R. 404.1520(e) and 416.920(e) (1992);

5.   If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (Sections 20 C.F.R. 404.1520(f) and 416.920(f) (1992).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden of going

forward with the evidence at the first four steps and the Commissioner has the burden at

Step Five to show that alternate jobs in the economy are available to the claimant,

considering her age, education, past work experience and residual functional capacity.

*See*, *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir.1990).


VI.   STANDARD OF REVIEW

    Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts,

and makes a determination of disability. This Court's review of such a determination is

limited in scope by Section 205 of the Act, which states that the "findings of the

Commissioner of Social Security as to any fact, if supported by substantial evidence, shall

be conclusive." 42 U.S.C. Section 405(g).  Therefore, this Court is limited to determining

whether substantial evidence supports the Commissioner's findings and whether the

Commissioner applied the correct legal standards.  *See*, *Abbott v. Sullivan*, 905 F.2d 918,

922 (6th Cir. 1990). The Court cannot reverse the ALJ's decision, even if substantial

evidence exists in the record that would have supported an opposite conclusion, so long as

substantial evidence supports the ALJ's conclusion.  *See*, *Walters v. Commissioner of*

*Social Security*, 127 F.3d 525., 528 (6th Cir. 1997).  Substantial evidence is more than a scintilla of evidence, but less than a preponderance.  *See*, *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion.  *See, id., Walters*, 127 F.3d 525, 532 (6th Cir. 1997). Substantiality is based upon the record taken as a whole.  *See*, *Houston v. Secretary of Health and Human Servs.*, 736 F.2d 365 (6th Cir. 1984).

VII.    ANALYSIS

The Plaintiff raises three issues:

1.    Whether the ALJ committed substantial error by rejecting the opinions of Plaintiff's treating physician in reaching his decision that Plaintiff is not disabled;

2.    Whether the ALJ committed substantial error by relying on an improper hypothetical question, which did not include all of Plaintiff's limitations as determined by her treating physician, the consultative examiner, and the medical consultant, to conclude that Plaintiff is not disabled;

3.    Whether the ALJ committed substantial error in finding that Plaintiff's limitations are not credible to the extent they are inconsistent with the ALJ's residual functional capacity assessment.

It is the conclusion of the undersigned that the ALJ correctly gave less weight to the opinions of Dr. Kravanya. A treating physician's opinion is not automatically entitled to controlling weight. Rather, such an opinion is entitled to controlling weight <u>only</u> if it is well supported by clinical and laboratory evidence and is not inconsistent with other substantial evidence of record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 286 (6th Cir. 2009) ("Conclusory statements from

12

physicians are properly discounted by ALJs."); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 652 (6th Cir. 2006) (en banc). The ALJ correctly found that Dr. Kravanya's opinions were not entitled to any weight to the extent they were opinions about whether Plaintiff was disabled – a legal issue reserved for the Commissioner (Tr. 24). 20 C.F.R. §§404.1527(d)(1), 416.927(d)(1). Additionally, the ALJ found that Dr. Kravanya's opinions were inconsistent with the evidence of record (Tr. 24). Although Plaintiff had degenerative joint disease and osteoarthritis in both knees, she took only Motrin for pain and was told that her arthritis could be improved with weight loss (Tr. 23, 38-39, 292, 382-84). Her treatment history does not support the limitations in Dr. Kravanya's opinions, particularly because Plaintiff repeatedly declined knee injections, choosing instead to pursue conservative treatment for her arthritis (Tr. 292, 336, 377, 382). In addition, Dr. Togliatti-Trickett's examination revealed no evidence of atrophy that would suggest an inability to perform even sedentary work (Tr. 219). *See*, e.g., *Dixon v. Comm'r of Soc. Sec.*, 183 F. App'x 248, 252, 2006 WL 1547860 (3d Cir. 2006) (recognizing that the ALJ properly noted the medical evidence showed normal physical findings and no muscle atrophy as might suggest an inability to perform sedentary work in finding that claimant was not disabled); *Hoffman v. Astrue*, 259 F. App'x 213, 219-20 (11th Cir. 2007). Although Dr. Kravanya listed Plaintiff's diagnoses as the bases for her assessed limitations, diagnoses alone without supportive evidence are insufficient to demonstrate functional limitations as severe as those assessed in her opinions. In making a disability determination, the ALJ must consider the degree of any resulting functional limitations,

13

not the mere presence or diagnosis of an impairment. *See* 20 C.F.R. §§ 404.1521, 416.921;

*Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988).  *See* also *Young v.*

*Sec'y of Health and Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *Kennedy v. Astrue*,

247 F. App'x 761, 767 (6th Cir. 2007).  ("mere diagnosis of obesity does not establish

either the condition's severity or its effect on [the claimant's] functional limitations.").

In contradiction to Dr. Kravanya's diagnosis, the state agency physicians reviewed

the evidence of record and opined that Plaintiff could perform a limited range of light

work (Tr. 223-28, 249).  Non-examining state agency psychological consultants, are

highly qualified experts in the evaluation of the medical issues in disability claims under

the Act, and their opinions are entitled to consideration under the same regulations used to

assess other medical opinions. 20 C.F.R. §§ 404.1527(e), 416.927(e); SSR 96-6p, 1996

WL 374180 (S.S.A.).  An ALJ may rely on a non-examining psychologist's opinion when

the opinion is consistent with the evidence of record. 20 C.F.R. §§ 404.1527(e),

416.927(e); SSR 96-6p; *Hoskins v. Comm'r of Soc. Sec.*, 106 F. App'x 412, 415

(6th Cir. 2004).  Although the ALJ ultimately found that Plaintiff had greater limitations

than indicated in these opinions (Tr. 23), the opinions nevertheless constitute contrary

evidence and supports the ALJ's rejection of Dr. Kravanya's opinions and ultimate

finding that Plaintiff could work.

Furthermore, some of Dr. Kravanya's opinions support the ALJ's RFC

assessment.  Dr. Kravanya indicated that Plaintiff could lift up to 10-15 pounds and

had postural and environmental restrictions, and needed to sit/stand at will. The ALJ's

limitation to sedentary work with numerous postural and environmental limitations allowed Plaintiff to sit/stand at will (Tr. 21-22).

The undersigned is of the opinion that the ALJ correctly gave greater weight to Dr. Togliatti-Trickett's opinion since it was consistent with her examination (Tr. 23). 20 C.F.R. §§ 404.1527(c), 416.927(c). Plaintiff told Dr. Togliatti-Trickett that she would walk for 100 feet and lift up to 10 pounds (Tr. 219). Upon examination, Plaintiff had no muscle atrophy and 5/5 muscle strength in all of her extremities except for knee flexion and extension (Tr. 219). Based on her examination, Dr. Togliatti-Trickett opined that Plaintiff would be able to stand for 45 minutes to 1 hour at a time, would require frequent breaks to sit to alleviate her knee pain, would be able to lift and carry 10-20 pounds (Tr. 219). Dr. Togliatti-Trickett indicated that Plaintiff should be able to perform sedentary work without significant limitations as long as she was allowed to stand and change positions on occasion, but she would be unable to walk more than 1-2 hours per day (Tr. 220). Because this opinion was consistent with her examination findings and the objective evidence, the ALJ gave her opinion the proper weight.

Therefore, the undersigned finds that substantial evidence supports the ALJ's assessment of the opinion evidence.

In regard to the credibility of Plaintiff's subjective complaints, the ALJ made the correct credibility assessment (Tr. 19-24). The regulations at 20 C.F.R. §§ 404.1529, 416.929 set forth the standard for evaluating a claimant's subjective symptoms. A claimant's subjective allegations of pain or other symptoms alone will not establish that

she is disabled. 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1529(a), 416.929(a).  It is the ALJ who determines the extent to which a claimant is accurately stating her functional limitations. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).  Since an ALJ is charged with observing a witness, his findings on credibility are given great weight and deference. *Walters*, 127 F.3d at 531.  The regulations require objective clinical signs and laboratory findings that demonstrate the existence of a medically determinable impairment that could reasonably be expected to produce the symptoms alleged. 20 C.F.R. §§ 404.1529(b), 416.929(b). If the medical evidence establishes the existence of a medically determinable impairment that could reasonably be expected to produce the symptoms alleged, the regulations then require the Commissioner to evaluate their intensity and persistence and their effect on the claimant's ability to work in light of the entire record. 20 C.F.R. §§ 404.1529(c)(1)-(3), 416.929(c)(1)-(3).

The ALJ correctly found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her alleged symptoms were not credible to the extent they were inconsistent with the RFC assessment (Tr. 19-24).  In making such a finding, the ALJ noted that Plaintiff treated her symptoms only with Motrin, heat, and ice (Tr. 23, 38-39, 292, 382-84).  Plaintiff's treatment remained conservative, using only anti-inflammatory medication, and she repeatedly declined steroid injections to ease her bilateral knee osteoarthritis (Tr. 292, 336, 377, 382).  A claimant's failure to seek medical treatment over an extended period of time is a factor to be considered in regard to the claimant's assertion of a disabling condition. See *Strong v. Soc. Sec. Admin.*, 88 F. App'x

16

841, 846 (6th Cir. 2004); *see* also SSR 96-7p, 1996 WL 374186, at * 7 (S.S.A. 1996) ("[T]he individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints.").   In addition, the ALJ relied upon the objective medical evidence, including Dr. Togliatti-Trickett's examination notes and opinion as to Plaintiff's functional capacity, which evidence indicated was greater than Plaintiff alleged (Tr. 23, 213-20).

        In this case, the ALJ found that Plaintiff had some functional limitations.  The ALJ accounted for Plaintiff's impairments by limiting her to a reduced range of sedentary work (Tr. 21).  Hence, substantial evidence supports the ALJ's conclusions.  In addition, Plaintiff has not identified any other functional limitations as a result of her impairments that were not considered in the RFC assessment.

        The ALJ incorporated Plaintiff's established limitations in a hypothetical question to the vocational expert, who responded that there were jobs that an individual with Plaintiff's limitations could perform (Tr. 52-55).  In regard to Plaintiff's need for a sit/stand option, the vocational expert stated a significant number of sedentary jobs permitted a sit/stand option, and that Plaintiff could perform the majority of the sedentary jobs even with this limitation (Tr. 53).  The vocational expert further testified that using a cane would diminish, but not eliminate, the number of available jobs that an individual with Plaintiff's limitations could perform (Tr. 55).  Hence, the undersigned finds that the ALJ's decision that Plaintiff was not disabled because she could perform other work in the national economy was supported by substantial evidence (Tr. 24-26).

Plaintiff asserts that the ALJ erred by not adopting the consultative examiner's limitation that Plaintiff would be able to stand for only 45-60 minutes at a time (Pl.'s Br. at 18-19).  However, the ALJ did find that Plaintiff would require a job that allowed her to sit or stand at-will (Tr. 21-22), hence incorporating the consultative examiner's limitation into the RFC assessment.  Dr. Kravanya's opinion that Plaintiff would require additional breaks due to limited concentration and focus is not supported by the objective medical evidence (Pl.'s Br. at 19).

Furthermore, Plaintiff's claim that the ALJ failed to ask the vocational expert whether his testimony was consistent with the Dictionary of Occupational Titles (DOT) is without merit.  At the administrative hearing, counsel for Plaintiff asked the vocational expert whether his testimony concerning the sit/stand option was based on a resource or the vocational expert's experience (Tr. 58).  The vocational expert testified that his testimony was based on his experience because no resource addresses a sit/stand option (Tr. 58).

Since substantial evidence supports the Commissioner's decision and the ALJ's evaluation of the evidence, the Court affirms the ALJ's decision that Plaintiff was not disabled.

VIII.   CONCLUSION

Based upon a review of the record and law, the undersigned affirms the ALJ's decision.  Substantial evidence supports the finding of the ALJ that Plaintiff retained the residual functional capacity (RFC) to perform her past relevant work as a customer service

representative or, in the alternative, a significant number of jobs in the national economy

(Tr. 14-26), and therefore was not disabled.  Hence, she is not entitled to DIB and SSI.


Dated:    March 8, 2013                              _____/s/George J. Limbert_____
                                                     GEORGE J. LIMBERT
                                                     UNITED STATES MAGISTRATE JUDGE